IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANDALL GONZALES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-0282 |
| | § | |
| RICK THALER, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 9) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the motion, the response in opposition (Document No. 13), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 9) be GRANTED, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED, and that this case be DISMISSED WITH PREJUDICE.

I.      **Introduction and Procedural History**

Randall Gonzales ("Gonzales") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 2000 felony conviction in the 337th District Court of Harris County, Texas, for aggravated robbery with a deadly weapon, Cause No. 816896.

Gonzales was charged by Indictment with that offense on August 27, 1999. On February 11, 2000, Gonzales was found guilty by a jury, and was thereafter sentenced by the trial court to twenty years incarceration. Gonzales' conviction was affirmed on appeal on January 31, 2002, *Prather v. State*, No. 01-06-00033-CR, and his petition for discretionary review was refused on February 2, 2004.

On July 26, 2004, Gonzales filed a state application for writ of habeas corpus. That application was denied by the Texas Court of Criminal Appeals on January 28, 2009, on the findings of the state trial court without a hearing. Ex Parte Gonzales, Application No. WR-55,101-02. This § 2254 proceeding was then filed by counsel for Gonzales two days later, on January 30, 2009.

Respondent has filed a Motion for Summary Judgment (Document No. 9), to which Gonzales has filed a response in opposition (Document No. 13). This § 2254 proceeding is therefore ripe for ruling.

## II. Factual Background

The Texas Court of Appeals, in its written opinion affirming Gonzales' conviction, set forth the factual background as follows:

> At approximately 2:30 p.m. on April 21, 1999, the complainant was robbed at gunpoint after leaving the Buffalo Hardware store at the corner of Westheimer and Kirby. The complainant testified that [Gonzales] approached him holding a large plastic garbage bag. [Gonzales] showed the complainant a firearm inside the garbage bag and demanded the complainant's watch and wallet. The complainant gave [Gonzales] his watch and wallet, including three credit cards.
>
> Later that same day, [Gonzales] used the complainant's credit card to purchase nutritional supplements from a General Nutrition Center store in Greenspoint Mall. Mr. Hoffpauir, a clerk, remembered the transaction made with one of the complainant's cards and was able to identify [Gonzales] at a lineup. The same credit card was used at several other stores in the same mall, but none of the employees of those stores could identify the person who used the credit card.

The complainant described his assailant as well-built, and clean-shaven, wearing a form-fitting shirt, a tan cap, and tennis shoes. When the complainant described the assailant to the police officer on the scene, he said the assailant was wearing blue jeans. At trial, the complainant corrected that description to say he was wearing khaki pants. Mr. Hoffpauir described the person who used the complainant's credit card at GNC as well-built, wearing a light t-shirt, and clean-shaven.

At trial, [Gonzales] presented an alibi defense. The owner and receptionist of the salon testified that [Gonzales] did not wear jeans to work and that he was at the salon on April 21, 1999, except when he left to get take-out food for lunch. A customer of the salon testified that she entered the salon at approximately 1:00 and saw [Gonzales] at that time. She remembered seeing [Gonzales] leaving to get lunch and also remembered that he had returned to the salon before she left at approximately 2:45 p.m. Two other customers testified that [Gonzales] was wearing long sideburns on the day of the robbery.

*Gonzales v. State*, No. 14-00-00702-CR at 1-2.

### III. Claims

Gonzales raises two claims in his § 2254 application:

1. that the trial court erred, and thereby denied him due process, when it admitted Officer Mar's warrant affidavit into evidence over counsel's hearsay objection; and

2. that his trial counsel was ineffective for failing to present evidence, in support of Gonzales' alibi defense, that Gonzales had been mis-identified before.

Gonzales' first claim was raised by him in his direct appeal, in his petition for discretionary review, and in his state application for writ of habeas corpus. The second claim was raised in Gonzales' state application for writ of habeas corpus.

Respondent argues in his Motion for Summary Judgment that no relief is available to Gonzales on either of his claims under § 2254(d) because the state courts' rejection of the claims is not contrary to or based on an unreasonable application of clearly established Federal law. Gonzales, in contrast, maintains that the state courts did not adjudicate his due process claim and therefore that

claim is subject to *de novo* review herein. As for the other claims, Gonzales maintains that the state courts' adjudication was unreasonable.

### IV.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.' " *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court

4

decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only

when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

**V.      Discussion**

As an initial matter, Gonzales argues that § 2254(d)'s standard of review does not apply to his claim that he was denied due process and a fair trial by virtue of the trial court's improper admission of hearsay from the arrest warrant affidavit because the state courts did not adjudicate that claim on the merits. According to Gonzales, while he raised a due process claim in his state application for writ of habeas corpus, the Texas Court of Criminal Appeals rejected the claim on the basis that the claim had been decided in connection with Gonzales' direct appeal. As a due process claim was neither raised nor addressed by the Texas courts in connection with his direct appeal, Gonzales maintains that this court must conduct a *de novo* review of the claim.

A claim is adjudicated on the merits within the meaning of § 2254(d) if it is decided on

6

substantive, as opposed to procedural grounds. *Salazar v. Dretke*, 419 F.3d 384, 395 (5th Cir. 2005). Here, the record clearly shows that Gonzales raised two claims in his direct appeal: that "the trial court erred in admitting the arrest warrant and its supporting affidavit and the evidence was factually insufficient to support his conviction." *Gonzales v. State*, 14-00-00702-CR at 1. In considering and deciding the first claim, however, the Texas Court of Appeals focused on whether the erroneous admission of the arrest warrant affidavit had a substantial and injurious affect on the jury's verdict – that is, whether Gonzales was harmed by the evidence's admission. *See infra* pp. 9-10. While the Texas Court of Appeals cited both state and federal cases in its discussion of harmless error, the due process standards articulated in both the state and federal cases is essentially the same. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995) ("When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless"); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict"). Thus, the Texas Court of Appeals, while it may not have used the words "federal due process" in its decision, did apply federal due process principles to Gonzales' complaint about the admission of the arrest warrant affidavit.[1]

Because the record shows that due process principles were applied by the Texas Court of Appeals to Gonzales' claim about the improper admission of the arrest warrant affidavit, the due

---

[1] Gonzales cites *Riley v. State*, 339 F.3d 308, 318 (5th Cir. 2003) in support of his argument that *de novo* review is warranted when the state court misunderstands the nature of the claim, and therefore does not adjudicate the federal aspect of the claim. The Texas courts in this case did not acknowledge Gonzales' claim as a federal due process claim, but it did, as set forth below, adjudicate the claim as though it raised federal due process issues.

process claim Gonzales raises herein has been adjudicated on the merits by the Texas courts.[2]

### A. Admission of Hearsay/Due Process Claim

In his first claim, Gonzales contends that the admission of an arrest warrant affidavit containing hearsay, including the personal opinion of the investigating officer that Gonzales was guilty of the charged offense, was prejudicial error that affected the outcome of his trial. Gonzales alleges that he was denied due process and a fair trial by virtue of this improperly admitted evidence because:

> [n]o physical evidence linked [him] to this crime. Two feeble and impeached state's witnesses were altogether contradicted by testimony of [Gonzales'] witnesses as to his dress, physical appearance, and whereabouts on the day and time of the robbery. Complainant Pacini claimed the robber was 5'6" to 5'7" and 140-150 pounds; Hoffpauir believed the person who bought the grape supplement from him was 5'9" to 6'0" and 210-215 pounds (RR4: 76, 125); consequently, the only reasonable conclusion is that the error in admitting Sgt. Mar's inadmissible "opinion of guilty" testimony (written and oral) wrongly swayed the jury, tilted the evidence and affected the verdict, leaving even the Sheriff of Nottingham in grave doubt about the harmlessness of the error. *O'Neal v. McAninch*, 513 U.S. 432 (1995).

§ 2254 Application (Document No. 1) at 23. In addition, Gonzales complains that the arrest warrant affidavit made reference to another case, cause no. 816010, and thereby improperly informed the jury that another case was pending against Gonzales at the time of his trial. Gonzales alleges in that regard:

> Exhibit #4 [the arrest warrant and affidavit] also notes Petitioner was arrested on a warrant charging him with aggravated robbery in the 337th District Court in Cause No. 816010, which was the case number in State of Texas v. Randall Gonzales wherein Steven Cochran was the complaining witness. The jury knew that No. 816010 dealt with another case, since the case on trial was #616896.

*Id.* at 20-21.

---

[2] The Texas Court of Criminal Appeals' denial of Gonzales' subsequent Petition for Discretionary Review is viewed as having been based on the same reasons set forth by the Texas Court of Appeals. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

As set forth above, Gonzales complained about the admission of the arrest warrant affidavit in his direct appeal. The Texas Court of Appeals considered and rejected the claim, finding that although the trial court erred in admitting the evidence, that error was not reversible error because the evidence in the arrest warrant affidavit did not have a substantial and injurious effect on the jury's verdict. In reaching that conclusion, the Court of Appeals wrote:

> In his first point of error, [Gonzales] contends the trial court erred in admitting the warrant and affidavit supporting his arrest. [Gonzales] timely objected to the admission as hearsay and the trial court overruled his objection. If probable cause for the arrest is not an issue, the recitals contained in an arrest warrant that are hearsay are not admissible. *Foster v. State*, 779 S.W.2d 845, 857-58 (Tex. Crim. App. 1989); *Ortiz v. State*, 999 S.W.2d 600, 607 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Here, probable cause was not contested; therefore, the trial court erred in admitting the hearsay statements in the arrest warrant and affidavit over [Gonzales'] objection.
>
> We now consider whether the trial court's error is reversible. Because no constitutional error is involved when hearsay is improperly admitted, we look to whether a substantial right was violated. *See* TEX. R. APP. P. 44.2(b). A substantial right is violated when the error made the subject of the appellant's complaint has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight influence on the verdict, it is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). If the reviewing court harbors "grave doubts" that an error did not affect the outcome, that court must treat the error as if it did." *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732 (1986). The United States Supreme Court has defined "grave doubt" to mean "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 994 (1995). If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict.
>
> The admission of improper evidence is harmless if the same facts are proved by other proper testimony. *Leady v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). We therefore examine the warrant and affidavit to identify information that was properly admitted through other evidence.
>
> The State points out that every declarant in the warrant packet testified at trial. Thus, many facts in the affidavit related by the complainant, Mr. Hoffpauir, and Officers Mar, Cook, and Steininger were properly admitted through live testimony.

> [Gonzalez] agrees that most of the information found in the warrant and supporting affidavit was admitted through live testimony, with two exceptions: (1) Officer Mar's personal opinion that [Gonzales] was guilty of aggravated robbery, and (2) the notation on the "police Warrant Notification Form" that the cause number of the offense charged was 816010.
>
> With regard to Officer Mar's personal opinion that [Gonzales] was guilty, [Gonzales] complains of the following langauge:
>
>> I, H. Mar, a peace officer employed by the Houston Police Department, assigned to the Robbery Division, do solemnly swear that I have reason to believe and do believe that Randall Valentino Gonzales, . . . did on or about April 21, 1999, in Harris County, Texas, commit the offense of Aggravated Robbery.
>
> Although Mar's opinion of [Gonzales'] guilt was improperly admitted, we find it could have only slightly affected the jury, if at all. When a police officer testifies about his investigation and arrest of a defendant, the jury's necessary conclusion would be that the police officer had reason to believe and did believe that the defendant committed the offense.
>
> With regard to the incorrect case number listed on the warrant information form, [Gonzales] claims that error informed the jury that [Gonzales] had been charged with a separate extraneous offense. The warrant information form, however, does not affirmatively show that [Gonzales] had been charged with another offense. It merely states the cause number for the offense charged in the case.
>
> [Gonzales] further claims this error is exacerbated by the fact that, during voir dire, the trial judge mistakenly read to the jury from a separate indictment against [Gonzales]. The record reflects that when the trial judge read the charge against [Gonzales], he began as follows: "The allegation is that on or [about] April the 11th in Harris County, Texas, the defendant did then and there while –". At this point, defense counsel asked to approach the bench. After a bench conference, which was not recorded, the trial judge resumed reading the indictment, this time reading the correct date of April 21, 1999. The record does not reveal that the jury could have inferred from the trial judge's mistake that [Gonzales] was charged with another offense. At most, the jury could infer that the trial judge read the wrong date and was corrected by defense counsel.
>
> We do not find the improper admission of the arrest warrant and the affidavit had a substantial and injurious effect or influence in determining the jury's verdict. Therefore, the error in admitting the warrant and affidavit was harmless.

*Gonzales*, at 2-5. It is the Court of Appeals' determination that the error in admitting the warrant

affidavit was harmless that is to be reviewed herein under § 2254(d). *See Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 2326 (2007) ("In *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (*per curium*), we held that, when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless that harmlessness determination itself was unreasonable.").[3]

Erroneous state law evidentiary rulings do not, in and of themselves, present federal constitutional issues that are cognizable in a federal habeas corpus proceeding. That is because it is not a federal habeas court's function "to review a state's interpretation of its own law." *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995); *see also Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does not "sit as a `super' state supreme court in a habeas corpus proceeding to review errors under state law"). When, however, the admission of evidence is so erroneous that the defendant claims his right to a fair trial has been infringed, a federal due process claim arises. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir.

---

[3] Generally, when a constitutional claim is raised by a state prisoner in the state courts on direct review, the harmless error standard set forth in *Chapman v. California*, 386 U.S. 18 (1967) (holding, in the context of direct review, " that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"),
is to be applied. *Fry*, 127 S.Ct. at 2325. Here, however, because Gonzales did not raise a constitutional claim *per se*, the Texas Court of Appeals did not review the claim under *Chapman*, and instead used the harmless error standard from *Brecht/O' Neal*. The harmless error standard utilized by the Texas Court of Appeals is, thus, the same standard used in federal habeas corpus proceedings. *See Fry*, 127 S.Ct. at 121-122 (" We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705."). Whether the Texas Court of Appeals should have conducted any type of review under *Chapman* is not at issue, and has no impact on the reasonableness analysis to be conducted herein.

1999) ("A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair.").

Relief is available in a habeas corpus proceeding on a due process claim premised on a state court error if the error "had substantial and injurious effect or influence" on the outcome of the case. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error . . . had 'substantial and injurious effect or influence in determining [the] jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Here, the Texas Court of Appeals concluded, and this Court is in no position to disagree, that the trial court erred in admitting the arrest warrant affidavit. The Texas Court of Appeals' subsequent conclusion that the erroneous admission was harmless – that it had no substantial and injurious effect on the jury's verdict – is not unreasonable upon this record. While the complainant's identification of Gonzales as his assailant was strong, Hoffpauir's was not. In addition, both witnesses were somewhat impeached. Against that, Gonzales presented the testimony of several, uninterested alibi witnesses. According to the Texas Court of Appeals,

> The only disputed element in this case was the identity of the perpetrator. The State's evidence . . . consisted of two eyewitness identifications. Evidence for the defense consisted of testimony from several alibi witnesses. The jury, by its verdict, chose between the conflicting witness testimony offered by the defense and the State. The jury, by its verdict, also chose to disregard the significant inconsistencies in the identifications given by the State's witnesses. Lacking physical evidence connecting [Gonzales[ to the crime charged, the evaluation of eyewitness credibility and demeanor was crucial in determining the appropriate verdict.

*Gonzales*, at 5 (citation omitted). This analysis by the Texas Court of Appeals as to the sufficiency of the evidence supports the Texas Courts of Appeals' other determination that the admission of the arrest warrant affidavit did not have a substantial and injurious effect on the jury's verdict. While the

evidence in this case was not overwhelming, and was closely contested, the jury, for whatever reason, believed the State's witnesses in their identification of Gonzales. Neither the opinion of Officer Mar in the arrest warrant affidavit that he believed Gonzales was the perpetrator, nor the incorrect reference in the arrest warrant affidavit to a different cause number, had any likely effect.[4] Therefore, while other courts might differ in their assessment of the harmlessness of the error, *see Gonzales*, concurring and dissenting opinion (Wittig, J.), the Texas Court of Appeals decision was not contrary to or an *unreasonable* application of the harmless error standard of *Brecht*.[5] Therefore, under § 2254(d), no relief is available to Gonzales on this claim.

### B. Ineffective Assistance of Counsel Claim

In his second claim, Gonzales maintains that his trial counsel, William M. Funk, was ineffective for failing to present evidence that Gonzales had been mis-identified as the perpetrator of a similar robbery (hereafter referred to as the "Cochran robbery"). According to Gonzales, counsel should have introduced such evidence to support his mis-identification and alibi defense in the instant case.

Mr. Funk, in an affidavit he filed in the state habeas proceeding, outlined the history of the charges against Gonzales, and responded to Gonzales' claim(s) of ineffectiveness as follows:

---

[4] Gonzales maintains that the opinion evidence from Officer Mar from the arrest warrant affidavit was crucial: " *No other evidence or testimony* of this damning nature was admitted into evidence." Response (Document No. 13) at 18 (emphasis in original). A review of the record, however, shows that it was the complainant's testimony and his unwavering belief that he had correctly identified Gonzales as the assailant that was crucial to the State's case.

[5] Gonzales relies on *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988) for his argument that the admission of Officer Mar's opinion testimony was error and that such error had a substantial and injurious effect on the jury's verdict. *Cooper* is wholly distinguishable. Not only was *Cooper* decided well before AEDPA's deferential standard of review was enacted, relief was granted in *Cooper* based on the cumulative effect of multiple trial errors – not solely the error related to the admission of police officer opinion testimony.

13

Randall Gonzales was charged with committing an aggravated robbery against Steve Cochran on April 11, 1999, at approximately 9:00 p.m., at Kirby and Bissonnet here in Houston. Cochran was in fear of his life and gave the suspect his Rolex watch and wallet upon demand. Cochran described the suspect as 5'9" - 130 lbs, and unshaven. He said he could identify him.

The Pacini robbery occurred about April 21, 1999, and the Cochran robbery occurred April 11, 1999. On May 6, 1999, Sgt. Mar, Houston Police Department (HPD) learned that on April 21, 1999, ten days after the Cochran robbery, in the 2600 block of Westheimer, another robbery occurred where the suspect fit the description of the suspect in this case, including the use of a similar type of weapon and the same M.O.

* * *

On June 22, 1999, Mar attempted to check the 14 unauthorized charges on Cochran's credit card made on April 11-12, 1999. He was able to recover the original receipts from Kroger's #395 and Champs Sports #4527 and submit them to the lab for prints. The surveillance video from Kroger's was no help because it rotated and scanned.

On November 2, 1999, Deputy Administrator Ralph Saldivar, HPD, processed the latent prints from the Kroger's and Champs' receipts. Evidence that the receipts were processed was not made available to me by the prosecution despite my having asked very specifically if there was any physical evidence which had not been given to the defense. It was discovered post-trial that there was a latent print analysis done prior to trial that did not contain fingerprints from [Gonzales]. During trial, I did not ask Saldivar whether the receipts contained fingerprints that matched anyone else with a criminal record because I was not aware of the existence of such analysis or of such receipts. It is quite possible that the receipts contained matching prints which would have further excluded [Gonzales] had I put on evidence of the second offense. We now know for a fact that those receipts did not contain any information tying them to [Gonzales]. Had I been provided with that print evidence, it would clearly have had some impact on the decision not to go into the second offense.

The state has claimed in their defense that the receipts go to the second offense which they chose not to prosecute, but that is too narrow view of such evidence. Had I had that evidence, I would have had a strong plank to utilize in defense of this action and this court should not be distracted by any argument that it went to an un-prosecuted offense.

It is undisputed the Cochran robbery occurred at approximately 9:00 p.m. on the night of April 11, 1999. I was informed by my client, as well as several witnesses that [Gonzales] was in Galveston at this time with Avagail and Garland McGar,

14

> Brenda and Drake Wactor, Dee Hernandez and Chester Gwin, Claire Gunn and James Berchelmann, and Tane Jones.
>
> Even though I was aware that [Gonzales] had an air-tight alibi to the Cochran aggravated robbery charge, I decided not only to refrain from offering testimony concerning the Cochran robbery and the fact that this was obviously a case of mistaken identity but I also filed a motion in limine in an effort to keep the state from going into the other pending charge[,] which was granted by the trial court.
>
> I believe that Randall Gonzales was egregiously harmed by my decisions in this regard. Had I offered evidence that [Gonzales] had been charged in another aggravated robbery that had taken place in the same neighborhood and within a few days of the Pacini aggravated robbery but also demonstrated that he could not have possibly committed the Cochran robbery, this would have raised significant doubt as to the accuracy of the identification of [Gonzales] as being the perpetrator of the Pacini aggravated robbery.

*Ex parte Gonzales*, Application No. WR-55-101-02, at 92-94.

Based upon the following findings of fact and conclusions of law, the Texas Court of Criminal Appeals rejected Gonzales' claim and Funk's assertion that he was ineffective:

4. Funk was unaware at the time of trial that the Houston Police Department Latent Lab determined that [Gonzales'] fingerprints were not present on two receipts related to the Cochran aggravated robbery.

5. Funk made a reasonable strategic decision to not present evidence of the Cochran aggravated robbery during the Pacini aggravated robbery trial;

6. [Gonzales] fails to establish that Funk's strategic decision to not present evidence of the Cochran robbery during [Gonzales'] Pacini robbery trial fell below prevailing professional norms.

7. The totality of representation afforded [Gonzales] was sufficient to protect his right to reasonably effective assistance of counsel[.]

*Id.* at 329. It is these findings and conclusions that are to be reviewed herein for reasonableness under § 2254(d) by reference to the clearly established federal law.

Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective

15

assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of

the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003).

Here, a review of the record and the factual findings of the state courts, which are presumed correct, and which have not been rebutted with clear and convincing evidence, show that defense counsel, Funk, made a strategic decision, *at the time of the trial*, to not introduce *any* evidence of the Cochran robbery of which Gonzales had been suspected and charged. Although there was proof at the time of trial that Gonzales had an alibi for the Cochran robbery, there was no concrete physical evidence that exonerated Gonzales. Therefore, at the time, it was not unreasonable for Funk to exclude any mention of the Cochran robbery for fear that the additional charge would be held against Gonzales by the jury. Moreover, even though Funk later discovered fingerprint evidence which counsel now views as exonerating Gonzales on the Cochran robbery, that later acquired information does not render the decision Funk made at trial any less reasonable. Only in hindsight did Funk determine that he should have introduced evidence about the Cochran robbery in addition to the alibi witnesses he presented in this case.[6] While the introduction of evidence that Gonzales had been mis-

---

[6] Funk as much as admits in his state court affidavit that his assessment of his performance is based purely on hindsight. In particular, Funk relates in his affidavit, from his discussion with jurors after the trial, that his alibi defense failed due to the jurors' dislike of one of the alibi witnesses:
> This is a case involving the actual innocence of the applicant. Alibi witnesses with no connection to the applicant, provided sworn testimony

17

identified as the perpetrator of a similar robbery might have convinced the jury he was innocent, it also might have backfired. Therefore, Funk's strategy in excluding it from evidence was reasonable. Counsel was not deficient, within the meaning of *Strickland*, for deciding not to raise it. Consequently, the Texas Court of Criminal Appeals' rejection of this ineffectiveness claim was not contrary to or an unreasonable application of *Strickland* and, upon this record, no relief is available to Gonzales on this claim under § 2254(d).

### VI. Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Gonzales on the merits of his claims under § 2254(d), the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 9) be GRANTED, that Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) be DENIED, and that this § 2254 proceeding be DISMISSED WITH PREJUDICE. In addition,

---

> corroborating the location of the applicant miles away from the scene of the crime when it occurred. Unfortunately, one of the key defense witnesses alienated the jury and the trial judge by referring to the prosecutor by her first name. (Only later did this witness inform me that the reason she did that was because she only heard the prosecutor's first name when she introduced herself). Each of the jurors that agreed to be interviewed post-trial expressed their dislike for this key witness, but none went so far as to say they did not believe her. It is a sad travesty of justice that an innocent man should spend years in prison, not because they failed to believe a witness, but because the jury did not like her. I am certain that is exactly what happened in this case.
>
> Had I put on the evidence of mistaken identity from the second charged offense, there is no doubt in my mind that the hostility the jury felt towards this key alibi witness would have been overcome by the sheer number of the additional alibi witnesses.

*Ex Parte Gonzales*, WR-55-101-02, at 94-95, Funk affidavit at pp. 6-7. Funk could not have anticipated the jury's negative feelings toward the alibi witness.

18

because reasonable jurists might debate the reasonableness of the state courts' harmless error analysis, the Magistrate Judge further

RECOMMENDS that a Certificate of Appealability issue on Petitioner Gonzales' claim that the admission of the arrest warrant affidavit denied him due process and a fair trial. A certificate of appealability from a habeas corpus proceeding may issue if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 120 S. Ct. 1595, 1603-1604 (2000) (internal quotations and citations omitted). Stated differently, where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 1604; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001). Here, despite the conclusion that the Texas courts' adjudication of Petitioner Gonzales' was not contrary to or an unreasonable application of the harmless error standard set forth in *Brecht*, reasonable jurists could debate whether the claim could or should have been resolved in a different manner. Therefore, a certificate of appealability on that sole claim should issue.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982),

19

*cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 2nd day of October, 2009.

Frances H. Stacy
United States Magistrate Judge